UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES W. GERENA,

                         Plaintiff,

      vs.                                                          9:13-CV-953
                                                                     (DNH/ATB)
NICK PEZDEK, et al.,

                        Defendants.
_____

CHARLES W. GERENA, Plaintiff pro se
TIMOTHY P. MULVEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 24). This matter was referred for Report and Recommendation on May 22, 2013 by U.S. District Judge David N. Hurd, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

On March 21, 2014, defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 24). After reviewing the motion to dismiss, the response, the replies, and all the documents that were submitted in support of the briefs and plaintiff's complaint, I found that the more prudent course of action was to convert defendants' motion into one for summary judgment and allow both parties to supplement their papers accordingly. (Dkt. No. 34). Plaintiff submitted additional materials on December 9, 2014. Defendants have chosen not to supplement their

initial papers.[1]

For the reasons set forth below, this court recommends denying defendants first motion for summary judgment.

## DISCUSSION

**I.**    **Facts**

In plaintiff's civil rights complaint, he alleges that on August 21, 2009, he was adjudicated a dangerous sex offender requiring confinement in a secure treatment facility in a state court proceeding brought pursuant to Article 10 of the Mental Hygiene Law.[2] (Dkt. No. 1 at 1). By Order dated March 20, 2103, plaintiff was ordered released and placed on Strict Intensive Supervised Treatment ("SIST") under the jurisdiction of the Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 24-2). Parole provided the court with conditions of SIST which the court incorporated into its order. (*Id.* at 4). On March 18, 2014, plaintiff certified that he read and understood these conditions, and further certified that the signing of the conditions evidenced his agreement to comply. (Dkt. No. 24-3, 24-4). After his release, plaintiff was ordered to report to parole officer Regina Orsaio. (Dkt. No. 24-3 at 1). In the conditions, plaintiff agreed, inter alia, that he "WILL permit my

---

[1] When defendants did not file additional documentation by the deadline, the court confirmed with counsel for defendants that he did not intend to do so.

[2] New York's Sex Offender Management and Treatment Act (N.Y. Mental Hygiene Law §§ 10.01, et seq.) authorizes the indefinite civil confinement or "strict and intensive" outpatient supervision and treatment of "sex offender[s] requiring civil management," defined as "detained sex offender[s] who suffer[] from a mental abnormality." N.Y. Mental Hygiene Law §§ 10.03(q), 10.07(f). Article 10 prescribes procedures to be followed with respect to these convicted sex offenders that might require civil commitment or supervision following completion of their prison terms.

Parole Officer to visit me at my residence, place of employment and/or program, and I WILL permit the search and inspection of my person, residence and property." (Dkt. No. 24-3 at 2, ¶ 9).

On July 24, 2013, DOCCS employees, parole officers Pezdek and Warren, along with unidentified members of the Utica Police Department searched plaintiff and his apartment without a warrant, confiscated and/or destroyed items of personal property, took plaintiff into custody, and placed several SIST violations against him. *Id.* at 2-3. As a result, plaintiff is currently confined at CNYPC. According to plaintiff, this warrantless search violated his Fourth Amendment rights.[3]

## II. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty*

---

[3] Plaintiff's complaint also alleged that he was wrongfully confined in a county jail for non-criminal behavior, that he has been subjected to conditions of civil confinement more restrictive than those experienced by convicted criminals, that he was denied equal protection on the basis of a mental health disability, and that he was improperly evaluated by a psychologist. These claims were dismissed by the Honorable David N. Hurd, United States District Judge on November 19, 2013. (Dkt. No. 4).

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to

the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

**III. <u>Analysis</u>**

    **A. Legal Standards**

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (citing U.S. Const. amend. IV). The touchstone in evaluating the permissibility of any search is reasonableness. *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004). Reasonableness "is determined 'by assessing, on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (citation omitted). Generally, reasonableness "requires a warrant and probable cause." *United States v. Julius*, 610 F.3d 60, 64 (2d Cir. 2010). However, the Supreme Court has recognized that a warrantless, suspicionless search may be justified "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (internal quotation marks omitted). One such exception is for a state's operation of a probation system. Such a program "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987). As the Supreme Court has explained, searches of

5

probationers "are necessary to the promotion of legitimate governmental interests" based on "the State's dual interest in integrating probationers back into the community and combating recidivism."[4] *Samson v. California*, 547 U.S. 843, 849 (2006).

Probationers and parolees, simply by virtue of their status, have diminished reasonable expectations of privacy–they enjoy only a conditional liberty dependent on their adherence to special probation restrictions. *See Griffin*, 483 U.S. at 874. Probation "is one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Samson v. California*, 547 U.S. 843, 850 (2006) (citations and internal quotation marks omitted). The Court further explained that "[o]n this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* As described above, plaintiff was subject to a regimen of SIST.[5] "SIST is a uniquely

---

[4] The Second Circuit has explained that "[p]robation, parole, and supervised release systems are charged with similar duties: (1) to assist the offender in the rehabilitation process; (2) to protect the public from persons whose release proves threatening to the community; and (3) to provide information and recommendations to the court or parole board so that it may make appropriate decisions regarding continued freedom for the individual released." *United States v. Newton*, 369 F.3d at 665, n.2 (citations and internal quotation marks omitted). Probationary "restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed." *Griffin*, 483 U.S. at 875 (citation omitted).

[5] Similar to the goals of probation and parole, the goal of the comprehensive system set out in Mental Health Law §§ 10.01 et seq. is "to protect the public, reduce recidivism, and ensure offenders have access to proper treatment," and "the system for responding to recidivistic sex offenders with civil measures must be designed for treatment and protection." *Id.* at § 10.01(c), (d). To this end, "a regimen of strict and intensive supervision and treatment places the person in the custody and control of the department of corrections and community supervision [and a] person ordered to undergo [such a regimen] is subject to lawful conditions set by the
6

restrictive program or 'substantially' more restrictive than parole or probation." *New York v. Enrique*, 937 N.Y.S.2d 203, 213 (N.Y. App. Div. 1ˢᵗ Dep't 2012). Therefore, though this case involves a search of an individual under SIST conditions rather than a parolee or probationer, SIST likewise justifies some departure from traditional Fourth Amendment standards.

This already diminished privacy interest enjoyed by individuals under supervision is further diminished when an individual has consented, in writing, to certain conditions: "persons on supervised release who sign such documents manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004). Individuals subject to these probationary restrictions can, therefore, be subjected to burdens upon their privacy that would be unconstitutional were they applied to the general citizenry. Still, such intrusions must occur pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement. *Griffin*, 483 U.S. at 873; *Newton*, 369 F.3d at 665. This depends on the existence and proper application of a governing statute, regulation, or condition of supervision authorizing the warrantless search. Under New York State law, a warrantless parole search must be "rationally and substantially related to the performance of [a parole

---

court and the department of corrections and community supervision." New York Mental Hygiene Law § 10.11(c). SIST is "a complex and individualized plan, primarily meant to safeguard the community into which the sex offender will be released." *New York v. Enrique*, 937 N.Y.S.2d 203, 213 (N.Y. App. Div. 1ˢᵗ Dep't 2012).

7

officer's] duty." *People v. Huntley*, 43 N.Y.2d 175, 179 (1977).[6]

## B. Application

As detailed above, when plaintiff was released from confinement, he was placed on SIST, under the jurisdiction of DOCCS. His actual expectation of privacy, therefore, is significantly diminished based on this status alone. Moreover, he signed a condition explicitly authorizing the search of his person, residence and property

---

[6] In 2006, the Supreme Court held a suspicionless search of a parolee did not violate the Fourth Amendment based only on the parolee's consent to be searched "at any time of the day or night, with or without a search warrant and with or without cause" as a condition of his parole. *Samson v. California*, 547 U.S. 843, 846 (2006).

The Second Circuit has not yet answered the question of whether this decision changes its past jurisprudence applying *Huntley* to parole and probation searches. *See, e.g., United States v. Barner*, 666 F.3d 79, 86 (2d Cir. 2012); *United States v. Quinones*, 457 F. App'x 68, 69 n.1 (2012) (declining to decide whether, after *Samson*, parolees who have signed a condition consenting to searches have no legitimate expectation of privacy, where the search "satisfies even the more solicitous standard set out by" *Huntley*); *United States v. White*, 622 F. Supp. 2d 34, 41-42 (noting that it is an open question whether *Samson* applies to New York parolees, and also that it is unclear whether *Samson* would apply to the search of a residence rather than a search of the parolee's person, but finding it unnecessary to decide the issue where the search at issue satisfies the more protective *Huntley* test); *United States v. Watts*, 301 F. App'x 39, 42, n.2 (saving "for another day and another case" the question of whether *Samson* supplants prior Second Circuit cases, explaining that the California statute permitting "anytime, anywhere" searches differs from New York law as explained by *Huntley*, and that, in any event, the search satisfied the *Huntley* requirements so any further analysis regarding the distinction was unnecessary); *United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007) (using special needs test to analyze the constitutionality of DNA indexing statute applied to probationers and noting that although a general balancing test was applied in *Samson*, the Supreme Court explicitly noted that "'parolees are more akin to prisoners than probationers'" and it is unclear whether the Supreme Court "would ultimately find that *probationers'* expectations of privacy are also sufficiently diminished to permit suspicionless searches of them on the basis of a general balancing test). *But see United States v. Massey,* 461 F.3d 177, 180-81 (opining that the waiver signed by parolee was indistinguishable from that in *Samson*) (Miner, J. concurring).

Until the Second Circuit holds that *Samson* changes the analysis of searches such as that conducted of plaintiff, who was not a parolee, this court will follow Second Circuit precedent and evaluate whether the search satisfies the more protective test that has been used by the Second Circuit applying *Huntley*.

8

further diminishing his expectation of privacy.[7] *See United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) ("[P]ersons on supervised release who sign such documents manifest an awareness that supervision can include intrusions into their residence and, thus, have a 'severely diminished expectation of privacy.'"). As explained above, so long as the conduct of the parole officer was "rationally and substantially related to the performance of the parole officer's duty," a warrantless search would be reasonable under the Fourth Amendment.[8]

The only statement that defendants make with respect to whether the search was rationally and substantially related to the performance of their duties is found in their Reply Memorandum of Law. Counsel makes the generalized comment that "defendants Pezdek and Mason were well within their authority, and the parameters set down by the Supreme Court, the Second Circuit and the New York Court of Appeals in conducting a warrantless search of plaintiff's residence and person related to their supervision responsibilities, i.e., to insure that plaintiff was adhering to the strict terms of his release from hospitalization with a dangerous mental condition." (Dkt. No. 30 at 4). Defendants state that the search was part of an "operation impact detail," however,

---

[7] The language of this search condition is taken from the parole regulations. N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(d).

[8] The court notes that plaintiff's main argument against dismissal appears to be that the search was not conducted by **his** parole officer, but rather two other parole officers and members of the Utica police department. The court observes that the presence of these other individuals would not make an otherwise reasonable search unreasonable. *See, e.g., United States v. Reyes*, 283 F.3d 446, 463 (2d Cir. 2002) ("[I]t is difficult to imagine a situation where a probation officer conducting a home visit in conjunction with law enforcement officers, based on a tip that the probation officer has no reason to believe conveys intentionally false information about a supervisee's illegal activities would not be pursuing legitimate supervised release objectives.").

9

no further explanation is provided. There are no affidavits from the officers or any other documentation explaining the reasons that they believed a search was necessary.[9] After this court converted defendants' motion to one for summary judgment, plaintiff provided additional information, including the Incident Report describing the July 24, 2013 search. (Dkt. No. 38 at 7-8). However, this document still does not provide information which would shed any light on whether the search was rationally and substantially related to the parole officer's duties. Instead, with respect to the rationale for the search, the report simply states that "[o]n Wednesday 7/24/13, during an Operation Impact detail with the Utica Police Department and Parole Officers Nick Pezedk and Warren Mason, a search of Charles Gerena's residence, and his person, was conducted." The defendants did not supply additional information when given the opportunity by the court. It is, therefore, unclear whether the search was "rationally and substantially related" to the performance of the parole officer's duties. *Cf. United*

---

[9] For example, in other cases where the search was held to be reasonable under the Fourth Amendment, the court was provided with information demonstrating that the parole officer received information that a parolee may have violated parole conditions. *See, e.g., United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012) (noting that it is the duty of a parole officer "to investigate whether a parolee is violating the conditions of his parole" and finding that where the parole officer received information that the parolee violated parole conditions, "it was clearly reasonable for her to investigate the accusations further"); *United States v. Quinones*, 457 F. App'x 68, 70 (2d Cir. 2012) (finding that a parole search was rationally and reasonably related to the parole officer's duty "where the parole officer had reason to suspect not only that Quinones was violating the terms of his parole, but also that he was engaged in criminal activity"); *United States v. Justiano*, 401 F. App'x 595, 596-97 (2d Cir. 2010) (concluding that during a home visit, observation of two ongoing parole violations provided sufficient "reasonable suspicion to conduct a further search for additional contraband") (citation omitted); *United States v. Massey*, 461 F.3d 177, 179 (2d Cir. 2006) (finding that during a home visit, parole officer was entitled to seize a machete in plain view and then conduct a further search); *United States v. Newton*, 369 F.3d 659, 666 (2d Cir. 2004) (holding that a search for firearms in a parolee's residence satisfied *Huntley* where the parole officers received information that Newton had a gun at his residence and had threatened his mother and her husband).

*States v. Quinones*, 457 F. App'x 68, 70 (2d Cir. 2012) ("[U]nder New York law, a parole search that is so divorced from reasonable suspicion as to be arbitrary and capricious might not be considered 'rationally and substantially related to the performance of [the parole officer's duty].'") (quoting *People v. Huntley*, 43 N.Y.2d 175, 183)). On this limited record, the court cannot conclude that there are no genuine issues of material fact, and therefore recommends denying defendants' first motion for summary judgment.[10]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 24) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: January 15, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[10] Although not raised by the defendants, the court notes that issues regarding qualified immunity may arise going forward, but the court is unable to address those issues at this stage of the proceedings.