UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHARLES W. GERENA,

            Plaintiff,

                     9:13-CV-953

    v.                 (DNH/ATB)

NICK PEZDEK, et al.,

            Defendants.

---

CHARLES W. GERENA, Plaintiff, pro se
TIMOTHY P. MULVEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd. Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 47). Plaintiff has responded in opposition to the motion.[1] (Dkt. No. 75). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I.  Procedural History

On March 21, 2014, defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 24). After reviewing the motion to dismiss, the plaintiff's response, the replies,[2] and all the documents that were submitted in support

---

[1] On November 6, 2015, plaintiff filed a letter, stating that he has not received "defendants' reply." (Dkt. No. 76). Defendants were not required to and did not file a reply.

[2] Plaintiff filed a response to the motion (Dkt. No, 29), defendants filed a reply (Dkt. No. 30), and plaintiff filed a surreply (Dkt. No. 31).

of the briefs and plaintiff's complaint, I found that the more prudent course of action was to convert defendants' motion into one for summary judgment and allow both parties to supplement their papers accordingly. (Dkt. No. 34). Plaintiff submitted additional materials on December 9, 2014. (Dkt. No. 38). Defendants chose not to supplement their initial papers.

After reviewing all the submissions, I recommended denying the defendants' first motion for summary judgment because they did not properly support the reason for the search of which plaintiff complained. (Dkt. No. 39 at 8-11). Defendants have now made a second motion for summary judgment to which they have added affidavits and other information relative to the search of plaintiff's house and his subsequent detention. The court will discuss the additional material below. Some of the facts are repeated from this court's original recommendation for purposes of continuity and clarity.

## II. Facts

In plaintiff's civil rights complaint, he alleges that on August 21, 2009, he was adjudicated a dangerous sex offender requiring confinement in a secure treatment facility, in a state court proceeding brought pursuant to Article 10 of the Mental Hygiene Law.[3] (Dkt. No. 1 at 1). By Order dated March 20, 2103, plaintiff was

---

[3] New York's Sex Offender Management and Treatment Act (N.Y. Mental Hygiene Law §§ 10.01, et seq.) authorizes the indefinite civil confinement or "strict and intensive" outpatient supervision and treatment of "sex offender[s] requiring civil management," defined as "detained sex offender[s] who suffer[] from a mental abnormality." N.Y. Mental Hygiene Law §§ 10.03(q), 10.07(f). Article 10 prescribes procedures to be followed with respect to these convicted sex offenders that might require civil commitment or supervision following completion of their prison terms.

ordered released and placed on Strict Intensive Supervised Treatment ("SIST") under the jurisdiction of the Department of Corrections and Community Supervision ("DOCCS"). (Pezdek Aff. ¶ 4 & Def.s' Ex. A) (Dkt. Nos. 47-1, 47-2). The conditions of SIST were incorporated into the court's order. (Def.s' Ex. A at 3 & Def.s' Ex. B). On March 18, 2014, plaintiff certified that he read and understood these conditions, and further certified that the signing of the conditions evidenced his agreement to comply. (Dkt. No. 47-3 at 10, 24-4). After his release, plaintiff was ordered to report to parole officer Regina Orsaio. (Def.s' Ex. B, Dkt. No. 47-3 at 1). In the SIST conditions, plaintiff agreed, inter alia, that he "WILL permit my Parole Officer to visit me at my residence, place of employment and/or program, and I WILL permit the search and inspection of my person, residence and property." (Def.s' Ex. B ¶ 9). In addition, as part of the SIST release, plaintiff agreed to make regular in-person reports to his parole officer and to refrain from possessing or viewing pornographic material. (Pezdek Aff. ¶ 5, Def.s' Ex. B ¶¶ 35-36).

On July 24, 2013, at approximately 8:40 a.m., plaintiff appeared at the Utica Community Supervision Office for his scheduled appointment with his parole officer. (Pezdek Aff. ¶ 6). Parole Officer ("PO") Orsaio "became suspicious" of plaintiff's possible "negative behavior." PO Orsaio recovered a piece of paper with "'young girl web addresses'" written on it from the trash can where plaintiff had been waiting prior to his appointment. (*Id.*) PO Orsaio also re-photographed plaintiff because he had changed his appearance by cutting all his hair off. (*Id.*) Because of this suspicious behavior, PO Orsaio determined that plaintiff's residence should be inspected to ensure

3

that he was complying with his SIST order. Defendants have attached PO Orsaio's contemporaneous notes as Exhibit C.[4] (Dkt. No. 47-4) (Exh. C).

Based upon the information obtained during the plaintiff's appointment, and at PO Orsaio's request, defendant Pezdek and defendant Mason, accompanied by Utica Police Officers (the "Impact Team"), went to plaintiff's home and conducted a search on July 24, 2013. (Pezdek Aff. ¶ 8). Based upon plaintiff's signed SIST agreement, the defendants did not believe that a search warrant was required. (Pezdek Aff. ¶¶ 7, 8 & Ex. B). Defendant Pezdek has attached his and defendant Mason's reports of the result of the search. (Pezdek Aff. ¶ 8 & Exs. D, E) (Dkt. Nos. 47-5, 47-6). During the search, the officers found an "undocumented cell phone" in plaintiff's front pocket as well as a piece of paper with a "number of explicit website[s] that appear to be porn related." (Def.s' Ex. D).

At the time of the search, plaintiff conceded that he had not reported the extra cell phone to PO Orsaio, but claimed that he "found the list of websites in the attic." However, a search of plaintiff's bedroom resulted in the discovery of a pad of paper "that appears to be the same as what the websites were written on." (*Id.*) A search of the plaintiff's extra cell phone revealed that he had web access on the "undocumented" telephone, together with a Facebook page in the name "Charles Wayne." (*Id.*) Defendant Pezdek's report states that he "SPOKE with SPO JOLMA WHO ISSUED

---

[4] Defendant Pezdek affirms that these notes are kept and stored by DOCCS in electronic form as business records. (Pezdek Aff. ¶ 6).

WARRANT."[5] (*Id.*)  Plaintiff was taken to the Oneida County Jail.  The officers seized the two cell phones, plaintiff's wallet containing papers and library card, the list of explicit websites, one journal, and one pad of paper.  Plaintiff signed a property receipt for the items at the jail. (*Id.*)  Defendant Mason's report is not as detailed as defendant Pezdek's report, but specifically states that the search was "authorized," and in addition, defendant Mason's report indicates that plaintiff gave his "permission . . . to search residence."  (Def.s' Ex. E) (Dkt. No. 47-6).

### III. <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion."  *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on

---

[5] Defendant Pezdek states in his affidavit that at approximately 10:00 p.m. on July 24, 2013, "Senior Parole Officer ["SPO"] Lana Joma issued a parole warrant for the detention of plaintiff at the Oneida County Jail, pending further action on his alleged violation of his SIST Order of Conditions." (Pezdek Aff. ¶ 10 & Def.s' Ex. F).

file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

## IV. Fourth Amendment

### A. Legal Standards

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (citing U.S. Const. amend. IV). The touchstone in evaluating the permissibility of any search is reasonableness. *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004). Reasonableness "is determined 'by assessing, on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (citation omitted). Generally, reasonableness "requires a warrant and probable cause." *United States v. Julius*, 610 F.3d 60, 64 (2d Cir. 2010). However, the Supreme Court has recognized that a warrantless, suspicionless search may be justified "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (internal quotation marks omitted).

One such exception is for a state's operation of a probation system. Such a program "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987). As the Supreme Court has explained, searches of probationers "are necessary to the promotion of legitimate governmental interests" based on "the State's dual interest in integrating probationers back into the

7

community and combating recidivism."⁶ *Samson v. California*, 547 U.S. 843, 849 (2006).

Probationers and parolees, simply by virtue of their status, have diminished reasonable expectations of privacy–they enjoy only a conditional liberty dependent on their adherence to special probation restrictions. *See Griffin*, 483 U.S. at 874. Probation "is one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Samson v. California*, 547 U.S. 843, 850 (2006) (citations and internal quotation marks omitted). The Court further explained that "[o]n this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id*. As described above, plaintiff was subject to a regimen of SIST.⁷ "SIST is a uniquely

---

⁶ The Second Circuit has explained that "[p]robation, parole, and supervised release systems are charged with similar duties: (1) to assist the offender in the rehabilitation process; (2) to protect the public from persons whose release proves threatening to the community; and (3) to provide information and recommendations to the court or parole board so that it may make appropriate decisions regarding continued freedom for the individual released." *United States v. Newton*, 369 F.3d at 665, n.2 (citations and internal quotation marks omitted). Probationary "restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed." *Griffin*, 483 U.S. at 875 (citation omitted).

⁷ Similar to the goals of probation and parole, the goal of the comprehensive system set out in Mental Health Law §§ 10.01 et seq. is "to protect the public, reduce recidivism, and ensure offenders have access to proper treatment," and "the system for responding to recidivistic sex offenders with civil measures must be designed for treatment and protection." *Id.* at § 10.01(c), (d). To this end, "a regimen of strict and intensive supervision and treatment places the person in the custody and control of the department of corrections and community supervision [and a] person ordered to undergo [such a regimen] is subject to lawful conditions set by the court and the department of corrections and community supervision." New York Mental Hygiene Law § 10.11(c). SIST is "a complex and individualized plan, primarily meant to safeguard the community into which the sex offender will be released." *New York v. Enrique*, 937 N.Y.S.2d

8

restrictive program or 'substantially' more restrictive than parole or probation." *New York v. Enrique*, 937 N.Y.S.2d 203, 213 (N.Y. App. Div. 1st Dep't 2012). Therefore, though this case involves a search of an individual under SIST conditions rather than a parolee or probationer, SIST likewise justifies some departure from traditional Fourth Amendment standards.

This already diminished privacy interest enjoyed by individuals under supervision is further diminished when an individual has consented, in writing, to certain conditions: "persons on supervised release who sign such documents manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004). Individuals subject to these probationary restrictions can, therefore, be subjected to burdens upon their privacy that would be unconstitutional were they applied to the general citizenry.[8] Still, such intrusions must occur pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement. *Griffin*, 483 U.S. at 873; *Newton*, 369 F.3d at 665. This depends on the existence and proper application of a governing statute, regulation, or condition of supervision authorizing the warrantless search. Under New York State law, a warrantless parole search must be "rationally and substantially related to the performance of [a parole

---

203, 213 (N.Y. App. Div. 1st Dep't 2012).

[8] In 2006, the Supreme Court held a suspicionless search of a parolee did not violate the Fourth Amendment based only on the parolee's consent to be searched "at any time of the day or night, with or without a search warrant and with or without cause" as a condition of his parole. *Samson v. California*, 547 U.S. 843, 846 (2006).

9

officer's] duty." *People v. Huntley*, 43 N.Y.2d 175, 179 (1977).[9]

B.   **Application**

As I stated in my prior report-recommendation, when plaintiff was released from confinement, he was placed on SIST, under the jurisdiction of DOCCS. His actual expectation of privacy was significantly diminished based on this status alone. Moreover, he signed a condition explicitly authorizing the search of his person, residence and property further diminishing his expectation of privacy.[10] *See United States v. Newton*, 369 F.3d at 665. As long as the conduct of the parole officer was

---

[9] The Second Circuit has not yet answered the question of whether *Samson* changes its past jurisprudence applying *Huntley* to parole and probation searches. *See, e.g., United States v. Barner*, 666 F.3d 79, 86 (2d Cir. 2012); *United States v. Quinones*, 457 F. App'x 68, 69 n.1 (2012) (declining to decide whether, after *Samson*, parolees who have signed a condition consenting to searches have no legitimate expectation of privacy, where the search "satisfies even the more solicitous standard set out by" *Huntley*); *United States v. White*, 622 F. Supp. 2d 34, 41-42 (noting that it is an open question whether *Samson* applies to New York parolees, and also that it is unclear whether *Samson* would apply to the search of a residence rather than a search of the parolee's person, but finding it unnecessary to decide the issue where the search at issue satisfies the more protective *Huntley* test); *United States v. Watts*, 301 F. App'x 39, 42, n.2 (saving "for another day and another case" the question of whether *Samson* supplants prior Second Circuit cases, explaining that the California statute permitting "anytime, anywhere" searches differs from New York law as explained by *Huntley*, and that, in any event, the search satisfied the *Huntley* requirements so any further analysis regarding the distinction was unnecessary); *United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007) (using special needs test to analyze the constitutionality of DNA indexing statute applied to probationers and noting that although a general balancing test was applied in *Samson*, the Supreme Court explicitly noted that "'parolees are more akin to prisoners than probationers'" and it is unclear whether the Supreme Court "would ultimately find that *probationers'* expectations of privacy are also sufficiently diminished to permit suspicionless searches of them on the basis of a general balancing test). *But see United States v. Massey,* 461 F.3d 177, 180-81 (opining that the waiver signed by parolee was indistinguishable from that in *Samson*) (Miner, J. concurring).

Until the Second Circuit holds that *Samson* changes the analysis of searches such as that conducted of plaintiff, who was not a parolee, this court will follow Second Circuit precedent and evaluate whether the search satisfies the more protective test that has been used by the Second Circuit applying *Huntley*.

[10] The language of this search condition is taken from the parole regulations. N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(d).

10

"rationally and substantially related to the performance of the parole officer's duty," a warrantless search would be reasonable under the Fourth Amendment. *Id.* at 665-66.

The additional evidence submitted by defendants shows that the visit and the search were clearly related to the performance of the parole officers' duties. Plaintiff raised his parole officer's suspicions when he appeared for his scheduled appointment, based on the piece of paper found in the garbage near where plaintiff was waiting for his appointment in which "young girl web addresses" was written. PO Orsaio also noticed that plaintiff had altered his appearance. Based upon this suspicious behavior it was not unreasonable for PO Orsaio to request that defendants Pezdek and Mason visit the plaintiff's home to execute a search. This incident was clearly not random, and the parole officers' duty was to make sure that plaintiff was not violating the SIST Order. Once the material forming the bases for potential violations was found, the officers called their superior officer to obtain authorization for a parole warrant to arrest plaintiff. Thus, neither the search, nor the arrest violated plaintiff's constitutional rights.[11]

The court notes that plaintiff's original argument against dismissal included the claim the search was not conducted by *his* parole officer, but rather two other parole officers and members of the Utica police department. Plaintiff continues to make the

---

[11] Defendants also argue that they are entitled to qualified immunity. However, the court need not reach this argument because I find that defendants did not violate plaintiff's constitutional rights in the first instance. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If the defendants have not violated the plaintiff's constitutional rights in the first instance, the court need not reach the issue of whether a reasonable person would have known of the constitutional violation.

same argument in his response to defendants' renewed motion. (Dkt. No. 75). Plaintiff states that he "never authorized" anyone other than his parole officer to conduct a search. (*Id.* at 5). Even assuming that plaintiff's argument had any merit,[12] the newly filed documents in support of defendants' motion for summary judgment confirm that plaintiff's parole officer requested that the other two officers conduct the home visit and the search, based upon suspicious behavior witnessed by plaintiff's own parole officer. (Def.s' Ex. D).

In addition, in my prior recommendation, I observed that the presence of these other individuals would not make an otherwise reasonable search unreasonable. See, e.g., *United States v. Reyes*, 283 F.3d 446, 463 (2d Cir. 2002) ("[I]t is difficult to imagine a situation where a probation officer conducting a home visit in conjunction with law enforcement officers, based on a tip that the probation officer has no reason to believe conveys intentionally false information about a supervisee's illegal activities would not be pursuing legitimate supervised release objectives."). Plaintiff himself attaches the DOCCS Directive relating to searches and seizures of a parolee's person or property. DOCCS Directive No. 9404. In this Directive it specifically states that "A PO may conduct *or direct a search of a releasee's person* when there is an articulable reason to do so, and when the search is reasonably related to the PO's duties . . . ." DOCCS Directive 9404(IV)(B)(3)(a) (emphasis added). The same would true of the search of plaintiff's residence. The parole officer himself or herself does not have to conduct the search, but may "direct a search" of the releasee's premises. *Id.* DOCCS

---

[12] This court makes no such finding.

Directive No. 9404(IV)(B)(5)(b). Thus, plaintiff's claim that he did not "authorize" anyone else to conduct the search does not invalidate the otherwise proper search because it is clear from the newly filed evidence that plaintiff's parole officer "directed" the others to search plaintiff and his residence.

Plaintiff also claims that the search itself was "an exaggerated response" to a governmental interest. (Dkt. No. 75-1 at 6). Plaintiff makes this statement because he believes that the officers damaged some of his property during the search. (*Id.* at 4). However, some property damage caused during a lawful search is not per se unreasonable under the Fourth Amendment. *Koller v. Hilderbrand*, 933 F. Supp. 2d 272, 278-79 (D. Conn. 2013). The Supreme Court has recognized that officers executing search warrants "'on occasion must damage property in order to perform their duties.'" *Id.* (quoting *Dalia v. United States*, 441 U.S. 238, 258 (1979)). *See also Cody v. Mello*, 50 F.3d 13, 16 (2d Cir. 1995) (same). Before any liability may be imposed for property damage, it must be established that the officers acted unreasonably or maliciously. *Dockery v. Tucker*, No. 97-CV-3584, 2008 WL 2673307, at *10 (E.D.N.Y. June 26, 2008). Mere negligence is not enough. *Id.*

In this case, plaintiff claims, without elaboration, that the Impact Team "tore Plaintiff's residence apart; throwing his personal property and other belongings around, trashing the apartment." (Dkt. No. 75-1 at 4). However, other than these conclusory allegations, which essentially describe the disarray which may follow the execution of a search, there is no indication that the defendants or the Impact Team violated plaintiff's constitutional rights in executing the search. Generally, determining whether a

13

particular instance of property damage was "unreasonable or malicious," is ordinarily not appropriate for summary judgment. *See Koller*, 933 F. Supp. 2d at 279 (courts have been reluctant to resolve the issue on summary judgment) (citing cases). However, where a plaintiff has not produced any documentary evidence to support his allegations, he fails to meet his burden to set out specific facts showing a genuine issue for trial. *Vaher v. Town of Orangetown, NY*, No. 10 Civ. 1606, __ F. Supp. 3d __, 2015 WL 5602848, at *12 (S.D.N.Y. Sept. 23, 2015) (distinguishing *Koller, supra*) (citing cases).

In this case, the defendants were looking for papers, journals, or any indication that plaintiff was viewing, or intended to view, pornographic websites by writing down the addresses of those sites. Defendants were also concerned about extra telephones that were not reported to plaintiff's parole officer. These items are small and could be hidden anywhere in plaintiff's home. The court notes that plaintiff also told the officers that he "found" the paper with the website addresses written on it in the "attic." Thus, the officers were justified in searching through the house for what could have been small, hidden items. As it turned out, plaintiff had lied about where he obtained the paper, and the officers found the pad on which the addresses had been written in plaintiff's bedroom. Plaintiff has presented no evidence that the defendants wantonly destroyed property or conducted the search "in a manner inconsistent with its professed purpose." *Vaher, supra*. Thus, the fact that plaintiff's property may have been thrown around or his house left in disarray, does not state a constitutional claim.[13]

---

[13] To the extent that plaintiff is attempting to bring a separate claim for property damage, it is well settled that negligence is not actionable under section 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). Even the intentional loss or destruction of property is not actionable under section 1983 because the State of New York provides a remedy under section 9

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 47) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 8, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

of the New York Court of Claims Act associated with property loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1983); *Davis v. New York*, 311 Fed. App'x 397 (2d Cir. 2009).